UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| QUINTON JENNINGS,<br><br>   Petitioner,<br><br>   v.<br><br>WARDEN,<br><br>   Respondent. | CAUSE NO.: 3:24-CV-344 |

**OPINION AND ORDER**

Quinton Jennings, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Miami Correctional Facility (MCF 24-01-000016) in which he was found guilty of fleeing/resisting. [DE 1]. The Warden has filed a response arguing that the petition should be denied. [DE 12]. Jennings filed a traverse in support of his petition. [DE 16]. For the reasons stated below, the court hereby **DENIES** the petition [DE 1].

BACKGROUND

The charge against Jennings was initiated on January 2, 2024, when Officer Timothy McCarty wrote a conduct report stating as follows:

> On 01/02/2024 I Officer T. McCarty was assigned to phase 2 yard when I went to get an incarcerated individual Jennings, Quinton Doc #121974 out of LHU sally port and place him back in KHU. At that time individual Jennings was refusing to submit to restraints. This incident escalated to the point the Taser had to be deployed due to his resistance.

[DE 12-1]. On January 4, 2024, Jennings was formally notified of the charge and given a copy of the conduct report. [DE 12-2; DE 12-1]. He pled not guilty and declined the assistance of a lay advocate. [DE 12-2]. He did not request any witnesses but requested Officer McCarty's "body cam" as evidence. (*Id.*)

Prior to the hearing, the hearing officer reviewed the footage from Officer McCarty's body camera on the date in question and summarized it as follows:

> On 1/10/24 at approximately 10:00 I, DHB Officer A. Sanders, was reviewing DVR/Body Cam footage for conduct MCF24-01-00016. Incarcerated Individual Jennings has requested DVR review of the incident. DVR/Body Cam footage was reviewed from the date of 1/2/24 and at approximately 12:42:01 I am able to see Ofc. McCarty enter LHU sallyport and Jennings is standing in there with a bag over his shoulder. I am able to identify this incarcerated individual based on their state issued ID. McCarty asks Jennings, "what's this stuff?" Jennings tells him that it's his stuff. When McCarty asks him where [sic] Jennings tells McCarty he is checking out because he doesn't want to get stabbed up and to take him to the hole. McCarty advises him he needs to fill out paperwork. Jennings again refuses and tells him he isn't going back. At approximately 12:42:53 McCarty orders Jennings to put his stuff down two times. Jennings tells McCarty he doesn't want to get stabbed up and McCarty reminds Jennings he needs to fill out the proper paperwork. McCarty then orders Jennings four more times to put his stuff on the ground. Jennings tells McCarty to write him up. At approximately 12:43:12 McCarty, while still giving orders to put the stuff down, attempts to grab the bag off Jennings but is unsuccessful. McCarty gives multiple commands to put the stuff down and Jennings continues telling McCarty "no." McCarty then advises the other officer to cuff him up. Jennings states "please don't touch me please." McCarty again tells Jennings to "cuff up." Jennings asks where he is going and McCarty tells him he is going back to his house. When Jennings says "no I'm not" McCarty tells him that he has to do the proper paperwork. Jennings says "fuck that, I'll do assault if I have to." McCarty tells Jennings he has to cuff up several more times and Jennings continually refuses. At approximately 12:44:06 the other staff member present attempts to restrain Jennings but Jennings pulls away and says "no, fuck that." At approximately 12:44:14 Jennings turns aggressively towards McCarty and McCarty deploys the Taser 7

>into the center mass of Jennings. At approximately 12:44:15 McCarty deploys a second round of the Taser 7 due to the first round being ineffective. At approximately 12:44:23 Jennings attempts to grab the laser wires and pull them off his body but falls to the ground. At approximately 12:45:04 the officers placed Jennings in restraints and assist him up. At approximately 12:45:06 Sgt. Mallot arrives on unit and assists in escorting Jennings off unit.

DE 12-4].

On January 16, 2024, a hearing was held on the charge. [DE 12-3]. Jennings pled not guilty and made the following statement in his defense: "There is no time on there and the date wasn't corrected this should have been retyped. This should have never been a conduct." (*Id.*) After considering the evidence, the hearing officer found Jennings guilty and imposed a sanction of 60 days lost earned credit time. (*Id.*) Jennings pursued relief through the administrative appeal process, but his appeal was denied. (DE 12-5; 12-6].

## ANALYSIS

When prisoners lose earned credit time in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence consistent with institutional safety and correctional goals; and (4) a written statement by the decisionmaker of the evidence relied on and the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy Due Process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

The petition is not a model of clarity, but the court understands Jennings to be asserting the following claims: (1) he was denied exculpatory evidence; (2) he was denied proper notice of the charge; and (3) the evidence of his guilt was insufficient. (ECF 1 at 2-3.)

1.   Denial of Evidence

Jennings first argues that he was denied the opportunity to present exculpatory video evidence. [DE 1 at 2]. The respondent argues that this claim is procedurally barred because Jennings did not present it in his administrative appeal. [DE 12 at 7].

Before a petitioner can obtain federal habeas relief, he must exhaust all available state remedies, and the failure to do so constitutes a procedural default precluding relief on the merits. 28 U.S.C. § 2254(b)(1)(A); *Markham v. Clark*, 978 F.2d 993, 995-96 (7th Cir. 1992). Indiana does not provide judicial review of decisions by prison disciplinary bodies, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied if the petitioner pursues all available administrative remedies. *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002). Indiana offers two levels of administrative appeal. *Id.* To properly exhaust, "a legal contention must be presented to each administrative level." *Id.* To fairly present his claim, he must "present both the operative facts and the legal principles that control each claim." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).

The records submitted by the respondent show that Jennings did not raise any claim about video evidence in his administrative appeal. [DE 12-5 at 1-2]. That means he is procedurally barred from presenting it here. *Markham*, 978 F.2d at 995. A federal court may consider a defaulted claim if the petitioner establishes both "cause" to excuse his

default and "actual prejudice resulting from the alleged constitutional violation." *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018). "Cause is an objective factor external to the defense that impeded the presentation of the claim to the state courts," and only applies to factors that "cannot fairly be attributed to the prisoner." *Id.* A petitioner can also obtain review of a defaulted claim if he establishes that failure to consider the claim would result in a miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This narrow exception requires the petitioner to establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (citation omitted).

Jennings appears to argue in his traverse that he did not present this claim in his administrative appeal because he was unaware of the applicable law at that time. [DE 16 at 5-6]. His *pro se* status or ignorance of the law does not excuse a procedural default. *Crutchfield*, 910 F.3d at 973; *Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002). He also suggests that it was the Department's responsibility to "catch any and all errors" whether "mentioned or not," but this is incorrect. [DE 16 at 6]. It was Jennings' responsibility to fairly present his claim at all available levels of state review. 28 U.S.C. § 2254(b)(1)(A); *Markham*, 978 F.2d at 995-96. He did not do so, and, therefore, this claim is defaulted.

Assuming Jennings could overcome the default, the respondent alternatively argues that his claim fails on the merits. [DE 12 at 9]. Inmates have a right to request and present evidence when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564. However, the right only extends to evidence that is exculpatory.

*Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996).

Jennings was given an opportunity to request evidence and witnesses at screening, and the only evidence he requested was Officer McCarty's "body cam." [DE 12-2]. This evidence was reviewed and considered by the hearing officer. [DE 12-4]. He suggests that the hearing officer should have obtained surveillance video from other dates and areas of the prison. As best as can be discerned, Jennings wanted this evidence to show that he was threatened by inmates in his housing unit, which would have proven that he was justified in acting as he did toward Officer McCarty. [DE 16 at 8]. First, Jennings did not request any such video evidence at screening, and he cannot fault the hearing officer for failing to consider evidence he did not properly request. *See Miller v. Duckworth*, 963 F.2d 1002, 1005 (7th Cir. 1992). Second, such evidence would not have exculpated him from the charge, because "self-defense" and "justification" are not recognized defenses in the prison disciplinary context. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) ("Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them[.]").

Jennings may also be arguing that his Due Process rights were violated because he did not get to review the footage from the body camera himself. Jennings requested that the footage be considered, and, consequently, it was obtained and considered by

the hearing officer. [DE 12-4]. The hearing officer was not required to disclose the footage to him, because prison disciplinary bodies are "entitled to receive, and act on, information that is withheld from the prisoner and the public[.]" *White v. Ind. Parole Bd.*, 266 F.3d 759, 760 (7th Cir. 2001). The video was withheld from him for security reasons. [DE 12-4]. The court has reviewed the footage and concludes that it could compromise prison security to disclose this evidence to Jennings, as it would reveal the capabilities of officers' body cameras and could give him a competitive advantage in future altercations with correctional officers. *See Wolff*, 418 U.S. at 566; *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). The Warden's motion to maintain this evidence under seal is **GRANTED**. [DE 14]. Jennings has not established a Due Process violation on this ground.

    2.    <u>Denial of Proper Notice</u>

He next claims that errors in the conduct report denied him proper notice of the charge. Under *Wolff*, an inmate must be given at least 24 hours' advance notice of the charge, and the notice given "should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003). Jennings was given significantly more than 24 hours' notice of the hearing: He was formally notified of the charge on January 4, 2024, and the hearing was held on January 16, 2024. [DE 12-2; DE 12-3]. The conduct report stated that he was charged with "fleeing/resisting" in violation of B-235 of the disciplinary code, and described the incident giving rise to the charge, namely, his altercation with Officer

McCarty on January 2, 2024. [DE 12-1]. The conduct report provided all the information Jennings needed to mount a defense. *Northern*, 326 F.3d at 911.

He points out that the conduct report was corrected by hand to reflect the proper date rather than being retyped, that it lists both the sally port and "MCF LH-L1" as the location where the incident occurred, and that no time is listed in the narrative section. In Jennings' view, this proves that Officer McCarty did not follow prison policy in completing the form. [DE 16 at 2-4]. However, a violation of policy does not provide a basis to grant him federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008).

Despite the minor discrepancies he points to, the conduct report was not confusing and contains the date, time, location, and a description of the incident. [DE 12-1]. There is nothing to indicate Jennings was confused about where or when this incident occurred, or that he did not know which incident the officer was referring to. He was clearly aware of the facts giving rise to the charge and mounted a defense, requesting footage from Officer McCarty's body camera and arguing, in effect, that he did not do anything wrong during this incident. Jennings has not demonstrated that there was a flaw in the notice he received that amounted to a Due Process violation, or that any such flaw prejudiced his ability to defend himself. *See Piggie*, 342 F.3d at 666. This claim is denied.

3. Sufficiency of the Evidence

Finally, Jennings challenges the sufficiency of the evidence. The "some evidence test" "is a lenient standard, requiring no more than a modicum of evidence." *Webb v.*

*Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (citations and internal quotation marks omitted). "Even 'meager' proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* (citation and internal quotation marks omitted). A conduct report alone can be sufficient evidence to support a finding of guilt, *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999), as can circumstantial evidence. *Meeks*, 81 F.3d at 721. It is not the province of a federal habeas court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652. Rather, the only question is whether there is some evidence to support the hearing officer's determination. *Id.*

Jennings was found guilty of Offense B-235, "Fleeing/Resisting." [DE 12-3]. This offense is defined by the disciplinary code as: "Fleeing or physically resisting a staff member while that staff member is in the performance of their duty." [DE 12-7 at 6]. The court has reviewed the video evidence and concludes that it amply supports the finding of guilt. On the video, Jennings can be seen and heard refusing several direct orders from Officer McCarty to put down his bag and submit to restraints. He tried to walk away from the officer, used obscenities, and threatened that he would "do assault if I have to." Ultimately, a taser had be used and other staff had to assist in physically restraining Jennings while he attempted to avoid being handcuffed. The conduct report and body camera footage provide sufficient evidence that Jennings was guilty of the charge.

For these reasons, the court **GRANTS** the Warden's motion to seal [DE 14], **DENIES** the petition [DE 1], and **DIRECTS** the clerk to close this case.

ENTERED this 9th day of January, 2025.

/s/ Andrew P. Rodovich
United States Magistrate Judge